UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In the matter of the Petition of                        :
INSURANCE COMPANY OF NORTH             :
AMERICA (now known as CENTURY         :
INDEMNITY COMPANY) and INA               :
REINSURANCE COMPANY (now known       :
as R&Q REINSURANCE COMPANY),            :
                                                                   :
                                        Petitioners,       :        08CV7003 (HB)
                                                                   :        <u>OPINION & ORDER</u>
          -against-                                        :
                                                                   :
PUBLIC SERVICE MUTUAL INSURANCE   :
COMPANY                                                   :
                                        Respondents.      :
------------------------------------------------------------------x
Hon. HAROLD BAER, JR., United States District Judge:

   Before the Court is the question of whether an arbitration proceeding halted *in medias res* upon the resignation of one party-appointed panelist may continue or whether under such circumstances the arbitration must commence anew.  Petitioners, Insurance Company of North America (now known as Century Indemnity Company) and INA Reinsurance Company (now known as R&Q Reinsurance Company) (collectively, "INA"), petition the Court for an order that (1) permanently stays the arbitration commenced in April 2007 by Respondent and Cross-Petitioner Public Service Mutual Insurance Company ("PSMIC"), (2) disqualifies the arbitral panel comprised of two of the original arbitrators and a third panelist purportedly appointed by PSMIC on INA's behalf and (3) compels the parties to arbitrate before a panel comprised of two arbitrators selected by INA and an umpire to be chosen.  In a cross-petition, PSMIC seeks an order that (1) compels the parties to proceed in the pending arbitration before the remaining members of the original panel, plus a third arbitrator purportedly appointed by PSMIC on INA's behalf (or, in the alternative, a replacement arbitrator appointed by the Court); and (2) confirms the original panel's summary judgment order pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. §9.  For the following reasons and based on the unique facts of this case, the arbitration must commence anew.  Therefore, INA's petition is granted in part and denied in part and PSMIC's cross-petition is denied.

## FACTUAL BACKGROUND

The underlying dispute concerns reinsurance provided by INA to PSMIC pursuant to a series of First Blanket Casualty Excess of Loss Reinsurance Contracts, effective from 1971 to 1986 (the "Reinsurance Contracts").  In 2005, PSMIC settled a claim for environmental liability incurred by its insured Deleet Merchandising Corporation ("Deleet") at a site in Newark, New Jersey.  Decl. of Daniel Hargraves, dated September 26, 2008 ("Hargraves Decl."), Ex. 15 at 5. PSMIC settled the claim and allocated the loss pro-rata over the 15 primary insurance policies PSMIC had issued to Deleet between 1971 and 1986. *Id.* Based upon this allocation, PSMIC billed its reinsurers, including INA, for their respective portion of the reinsured loss.  Hargraves Decl. Ex. 15, at 6.  INA disputed the propriety of the pro-rata allocation, contending that PSMIC's billing did not accurately represent the risk to the underlying policies and was thus improper, unreasonable, and contrary to case law that INA contended controlled the dispute, namely the New Jersey Supreme Court's decision in *Carter-Wallace v. Admiral Insurance Co.*, 154 N.J. 312 (1998) ("*Carter Wallace*").  Hargraves Decl. Ex. 5 at 1, 5.

PSMIC demanded arbitration of the dispute on April 9, 2007 pursuant to the arbitration provisions of the Reinsurance Contracts, each of which provides that a dispute under the applicable contract "shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen."  Decl. of Raymond Mastrangelo, dated August 1, 2008, ("Mastrangelo Decl.") Ex. A., at 14.  The arbitration provisions further provide that "[i]f either party refuses or neglects to appoint an arbitrator within thirty days after receipt of written notice from the other party requesting it to do so, the  requesting party may appoint two arbitrators." *Id.* PSMIC named Thomas M. Tobin as its party-appointed arbitrator and INA named John D. Sullivan.  Roger Moak was selected as the umpire (the panel comprised of Tobin, Sullivan and Moak is hereinafter referred to as the "Original Panel").  Hargraves Decl. Ex. 3.

The parties agreed to a pre-hearing discovery and briefing schedule that provided that either party could make a motion for summary judgment at any time prior to February 1, 2008.[1] Hargraves Decl. Ex 11, 15.   On that date, PSMIC served a summary judgment motion that sought payment of the entire balance it claimed was due from INA for the Deleet loss, pre-award

---

[1] In setting the pre-hearing schedule INA did not oppose a summary judgment procedure, but argued that the party responding to such a motion must be permitted to conduct sufficient discovery to meaningfully oppose the motion and thus disagreed with a schedule that permitted either party to file a motion for summary judgment "at any time."  INA's position was rejected by the Original Panel.  Hargraves Decl. Ex. 13, 14.

interest, and expenses, costs and attorneys' fees incurred in both the arbitration and in connection with the Deleet loss.  Hargraves Decl. Ex 15, at 30.

In its memorandum of law in support of its summary judgment motion, PSMIC characterized INA's contention that the Deleet loss should have been allocated in accordance with the formula set forth in *Carter-Wallace* as INA's "sole defense."  *Id.* at 1.  PSMIC argued that *Carter-Wallace* had no application to the dispute because the Reinsurance Contracts provide that PSMIC is the "sole judge" of amounts paid under its primary policies, the *Carter-Wallace* formula is inapplicable to a single insurer's allocation of a settlement among its own policies or in the reinsurance context, and, in any event, New York law, not New Jersey law, controlled the dispute.  *Id.* at 1-3; Hargraves Decl. Ex. 17.  In opposition, INA argued that PSMIC's allocation of the Deleet loss was unreasonable and not made in good faith, primarily, but not exclusively, because PSMIC did not follow the formula set forth in *Carter-Wallace*.  Hargraves Decl. Ex. 16. INA also argued that PSMIC misrepresented to INA how the settlement was in fact allocated, that the factual question of reasonability could not be decided on summary judgment, and that such a motion was premature because discovery was not then complete. *Id.*

After hearing several hours of oral argument on April 3, 2008, the Original Panel issued a unanimous decision in an Order dated April 7, 2008 (the "Summary Judgment Order") that ruled that New York law, not New Jersey law, applied to the dispute and that

> 3. Accordingly, [PSMIC] having made a reinsurance allocation which was not based on Carter-Wallace, is found not to have rendered that allocation unreasonable under North River [Insurance Co. v. ACE American Reinsurance Co., 361 F.3d 134 (2d Cir. 2004)] and Travelers [Casualty & Surety Co. v. Gerling Global Reinsurance Co. 419 F.3d 181 (2d Cir. 2005)].  As no dispute is found as to whether [PSMIC's] reinsurance allocation is within the treaties at issue, the parties will now focus any further discovery and their hearing preparation on whether—for reasons other than Carter-Wallace—[PSMIC's] reinsurance allocation was made in bad faith or was unreasonable.
>
> 4. [PSMIC's] motion is in all other respects denied—without prejudice to [PSMIC] renewing its application for interest, fees, and costs if the Panel ultimately finds the reinsurance allocation to have been reasonable and in good faith.

Hargraves Decl. Ex. 19.[2] As of the date of the Summary Judgment Order, the hearing was scheduled to commence May 9, 2008.

---

[2] The Original Panel's Summary Judgment Order and certain other documents related to the arbitration have been filed under seal.  However, because the opinion of this Court is an adjudication on the instant

On April 18, 2008 INA served a motion seeking reconsideration of the Summary Judgment Order and separately moved to adjourn the hearing. *Id.* at Ex. 21. With PSMIC's consent, Roger Moak, umpire of the Original Panel, set a briefing schedule for the motion to reconsider pursuant to which PSMIC's opposition brief was due on May 2, 2008. *Id.* at Ex. 23. On May 2, 2008 John Sullivan, INA's party-appointed arbitrator, notified the parties that he was forced to resign from the panel for health reasons. *Id.* at Ex. 24.

After Sullivan's withdrawal, the dispute at issue before this Court arose in series of letters between the parties and the remaining members of the Original Panel. PSMIC demanded that INA appoint an arbitrator to replace Sullivan. *Id.* at Ex. 27. INA contended that the Second Circuit's decision in *Marine Products v. MT Globe Galaxy*, 977 F.2d 66 (2d Cir. 1992) ("*Marine Products*"), required that the arbitration must "commence anew" and purported to appoint Andrew Noga as its party-appointed arbitrator in a new arbitration proceeding, conditionally appointing him as Sullivan's replacement should it ultimately be determined that the existing arbitration must continue. *Id.* at Ex. 29. More than thirty days after its initial demand, and after INA had refused to authorize Mr. Noga to proceed in the existing arbitration citing his "conditional" appointment, PSMIC purported to appoint James White as INA's panelist in the existing proceeding. *Id.* at Exs. 32, 35. Subsequently INA purported to appoint Lee Rutledge as PSMIC's party-appointed arbitrator in the "new" arbitration proceeding. *Id.* at Ex. 41. Umpire Roger Moak, writing for the Original Panel, opined that "substantive rights have already accrued in this arbitration and that PSMIC would be unduly prejudiced by INA's insistence on the

---

cross-petitions I find applicable the Second Circuit's definitive statement that "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006) (citing *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). Moreover, the import and effect of the arbitration panel's Summary Judgment Order is the central issue before the Court and thus interpreting its language is not only "relevant to the performance of [this Court's] judicial function," *U.S. v. Amodeo*, 44 F.3d 141, 148 (2d Cir. 1995) (*Amodeo I*), but *necessary* to it. Accordingly, the greatest possible weight is to be given to the presumption of public access to the documents that directly affect this decision. *U.S. v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (*Amodeo II*). At a conference with counsel in this case, I indicated that I did not find compelling the reasons articulated as to why the entire case should remain under seal, and I hold the same view with respect to those documents quoted or discussed herein. Therefore, to the limited extent quoted and discussed in this opinion, such documents as were originally filed under seal are hereby unsealed. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 141 (2d. Cir. 2004) ("we see no reason why the absence of a motion of a party to the litigation or some third party requesting that a seal or protective order be lifted should remove a federal court's ability to monitor and modify its previous orders in exercise of its "supervisory power over its own records and files." (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)).

formation of an entirely new panel at this stage of the proceeding," but urged the parties to seek judicial determination as to how to proceed.   *Id.* at Ex. 40.

## DISCUSSION

### A.  Authority to Stay Pending Arbitration

As an initial matter, PSMIC's argument that this Court does not have authority to stay the pending arbitration is unavailing to the extent that such authority is necessary to implement the general rule in this Circuit that an arbitration must "commence anew" upon the death of an arbitrator.  Although the Second Circuit has not expressly stated "whether the FAA allows a district court to stay an arbitration, it has affirmed district court decisions staying or enjoining arbitration proceedings without finding it necessary to articulate its basis for doing so." *Maronian v. American Communications Network*, 2008 WL 141753 (W.D.N.Y. 2008) (citing *Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P.,* 49 F.Supp.2d 331, 342 (S.D.N.Y.1999).  A number of federal courts have held that, "in appropriate circumstances, § 4 of the FAA may be applied to stay or enjoin arbitration proceedings." *U.S. v. Eberhard,* 2004 WL 616122, *3 (SDNY 2004) (quoting *Westmoreland Capital Corp. v. Findlay* 100 F.3d 263, 266 n. 3 (2d Cir. 1996)).  To the extent that implementation of the "general rule" in this Circuit regarding the procedure to be followed after death of an arbitrator requires that the initial arbitral proceeding be permanently stayed or enjoined, such circumstances are, in the Court's view, "appropriate circumstances [where], § 4 of the FAA may be applied to stay or enjoin arbitration proceedings." *Westmoreland Capital Corp.,* 100 F.3d at 266 n.3.  PSMIC's argument that this Court is without power to halt the initial arbitration proceeding to compel the parties to commence a new arbitration is therefore rejected.

### B.  Death or Resignation of Arbitrator

The "general rule" is that "where one member of a three-person arbitration panel dies before the rendering of an award and the arbitration agreement does not anticipate that circumstance, the arbitration must commence anew with a full panel."[3]  *Trade & Transport v. Natural Petroleum Charterers,* 931 F. 2d 191, 194 (2d Cir. 1991) ("*Trade & Transport*). However, under certain "special circumstances" a departure from the general rule is warranted. *Id.*  Thus, in *Trade & Transport*, the Second Circuit acknowledged an exception to the general rule where the panel had issued a "partial final award" and "was without power to revisit that

---

[3] Decisions that consider the death of an arbitral panelist are applicable here because neither party disputes that Mr. Sullivan resigned for legitimate and serious health reasons.

question." *Marine Products*, 977 F.2d at 68 (discussing *Trade & Transport*).  INA contends that *Marine Products* applies and the arbitration must commence anew, whereas PSMIC argues that *Trade & Transport* and the Second Circuit's more recent decision in *Zeiler v. Deitsch*, 500 F.3d 157 (2d Cir. 2007) ("*Zeiler*"), mandate that the existing arbitration continue.

      *Trade & Transport*, however, is distinguishable.  There, one of the parties in a pending arbitration of a maritime contract dispute filed suit in district court for breach of contract and fraud and attached the funds of its adversary in the arbitration.  *Trade & Transport*, 931 F.2d at 192.  At the district court's suggestion, the parties requested that the arbitration panel issue an immediate determination as to liability.  *Id.*  The panel complied and issued what it styled as a "partial final award."  *Id.* at 193.  Thereafter, the losing party, NPC, moved for reconsideration of the "partial final award" but the panel rejected the motion and stated that with respect to that award it was *functus officio.  Id.*  Two-and-one-half years after the "partial final award" and one year after denial of the reconsideration motion (but prior to further arbitration proceedings relative to damages) NPC's appointed arbitrator died.  *Id.* at 194.  NPC argued that the dispute had to be rearbitrated *ab initio* but both the district court and the Second Circuit disagreed.  *Id.*

      The Second Circuit opined that application of two principles relative to arbitration warranted a departure from the "general rule" articulated in *Marine Products*:  First, "the submissions of the parties determines the scope of the arbitrator's authority"; and second "once arbitrators have finally decided *the submitted issues* they are, in common-law parlance, *functus officio*."  *Id.* at 195 (first emphasis added).  The Circuit noted that the parties had explicitly modified their original submissions to the arbitration panel to follow district court's recommendation, requesting the panel to issue a "bifurcated decision" as to liability that "was expressly intended to have immediate collateral effects in the judicial proceeding."  *Id.*  The "general rule" did not apply because the panel's "partial final award" did "conclusively decide every point required by and included in the first part of the parties' modified submission."  *Id.*

      Here, the Original Panel's April 7, 2008 Summary Judgment Order cannot be said to have "conclusively decide[d] every point" in the parties' submission because PSMIC sought a final award on liability and damages but received only a ruling about the applicability and effect of case law on which INA's primary defense was premised.  The language of the Order itself makes clear that not all of the submitted issues were decided:  PSMIC's motion was "denied in all other respects.  Hargraves Decl. Ex. 19.  Moreover, that the Original Panel set a briefing schedule for INA's motion for reconsideration shows, at a minimum, that the panel had *not yet*

determined that with respect to the issues decided by the Summary Judgment Order they were *functus officio*; the panel was at least willing to entertain argument as to why its summary judgment order should be reconsidered and reversed.  Far from "deciding every point" under submission, the Summary Judgment Order is an interim decision on a matter of law.  Although PSMIC argues that the Summary Judgment Order makes the arbitration comparable to a truly bifurcated proceeding where liability has been decided but damages have not been determined, the arguments of the parties to the panel and the language of the Summary Judgment Order itself do not suggest such a clear cut delineation between those issues that were decided and those left for the upcoming hearing.  These facts do not add up to the "special circumstances" that merited departure from the "general rule" in *Trade & Transport* and thus do not mandate an order compelling the parties to continue the existing arbitration.

The Second Circuit's decision in *Zeiler* does not alter this conclusion.  In *Zeiler*, the Second Circuit considered a unique arbitral process before a "Beth Din," a Jewish religious tribunal of three rabbis, by which a complex business relationship was unwound over a period of years.[4]  *Zeiler*, 500 F. 3d at 160.  The arbitral panel first issued a decision that set a general framework for the dissolution and the parties implemented that decision over a period of years through negotiation and by turning to the panel when disputes arose.  *Id.* at 161.  After the parties reached a comprehensive agreement to unwind their business enterprise, one party-appointed member of the tribunal resigned.  *Id.* at 162.  The Second Circuit stated that the "authority of the two remaining arbitrators after the resignation of the third one is essentially an issue of contract interpretation" and after considering the comprehensive agreement in the context of the long-running arbitration under the Jewish "Zabla" method of arbitration, the Circuit construed the agreement to allow the remaining two panelists to continue to decide ongoing disputes as they arose.  *Id.* at 160-66.

Unlike the "ongoing and complex arbitration" at issue in *Zeiler*, 500 F.3d at 167, the arbitration at issue here is a relatively straightforward insurance coverage dispute.  Moreover, as discussed below, the Summary Judgment Order is not a "confirmable" final award in part because the Original Panel had already agreed to entertain a motion for reconsideration at the time of Sullivan's withdrawal.  Finally, the Reinsurance Contracts are silent on the procedure to

---

[4] "This was not a 'regular' arbitration in which the arbitrators would hear all the evidence and eventually reach a conclusive resolution of the entire case.  Rather, the arbitrators were asked to preside over the continuing process of sorting out the details of a commercial relationship, entering operative decisions along the way." *Zeiler*, 500 F.3d at 169.

be followed in the event of the resignation or death of an arbitrator.[5]  Without the same sort of context available to the Circuit in *Zeiler* (i.e. a series of sequential agreements and arbitral decisions all governed by Jewish law, "an intricate set of norms culled from written and oral tradition and custom," 500 F.3d at 168), I do not have enough to justify a departure from the general rule that was in effect at the time the Reinsurance Contracts were signed more than twenty years ago. *See, e.g. Cia De Navegacion Omsil, S. A. v. Hugo Neu Corp.*, 359 F.Supp. 898 (DCNY 1973).

The *Zeiler* decision does highlight the potential for "bad faith manipulation of the arbitration process" inherent in ordering the parties to recommence an arbitration after the resignation of one arbitrator, 500 F.3d at 167, and I am concerned by the potential for abuse of a rule that can afford a losing party a "second bite at the apple" upon the resignation of its party-appointed arbitrator.  However, there is no suggestion of any misconduct here and neither party disputes the severity of health condition that forced Mr. Sullivan to resign.  Moreover, my decision is expressly premised on the unique facts of this case where the resignation occurred while pending before the panel was a motion for reconsideration of an order that itself cannot be fairly considered a "partial final award."  *See Trade & Transport*, 931 F.2d at 195.

I am also sensitive to the potential for wasted resources where an arbitration must be redone from scratch.  *See Zeiler*, 500 F.3d at 167.  However, in the present case the parties will be able to salvage much from their initial summary judgment briefs and will not need to seek discovery of documents already produced.  Moreover, the parties would be required to re-argue the applicability and effect of *Carter-Wallace* in the existing proceeding if the panel were to grant INA's the motion for reconsideration.

This case is thus factually closer to *Cia De Navegacion Omsil*, 359 F.Supp. 898, where one party-appointed arbitrator died after the hearing but before a final decision was rendered.  There, the court noted the "subtle and possibly decisive impacts" that a party-appointed-arbitrator's "questions to witnesses and counsel, his comments along the way, [and] his observations during interim deliberations may have . . .  upon the end result." *Id.* at 898-899.  By the same logic it is unfair to force INA to submit its motion for consideration a panel comprised

---

[5] The arbitration provisions do provide that "[t]he decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding on both parties."  Mastrangelo Decl. Exs. A – F. However, it is not clear if this language applies to only the final decision of the panel (as suggested by use of the article "the" in "the decision," as opposed to "a decision") or if it applies to interim decisions (as suggested by the absence of the qualifier "final").

8

of two arbitrators who heard argument on, and ultimately decided, the summary judgment motion for which reconsideration is requested and one arbitrator who did not.

For the foregoing reasons and based specifically upon the status of the existing arbitration at the time of Mr. Sullivan's resignation, the general rule articulated in *Marine Products* controls, and the arbitration must commence anew.  INA's petition to permanently stay the existing arbitration is thus GRANTED and PSMIC's cross petition to compel the parties to continue the existing arbitration is DENIED.

### C.  Confirmation of the Summary Judgment Order.

The FAA only permits a federal court to confirm an arbitration award that is final.  *Banco De Seguros Del Estado v. Mut. Marine Office*, *Inc.*, 230 F.Supp.2d 362, 368 (SDNY 2002); *see also Michaels v. Mariform Shipping*, 624 F.2d 411, 414 (2d Cir. 1980) (noting that under FAA "a district court does not have the power to review an interlocutory ruling by an arbitration panel.")   As a result of the pending motion for reconsideration and the Summary Judgment Order's failure to decide every point in the parties' submissions, PSMIC's motion to confirm the Order pursuant to Section 9 of the FAA must also be denied.  *See Employers' Surplus Lines Ins. Co. v. Global Reinsurance Corp.*, 07CV2521 (HB), 2008 WL 337317, *4 (SDNY 2008).

This result obtains because the Summary Judgment Order did not "finally dispose of a separate, independent claim." *Id.* at *6.  An arbitral panel disposes of "separate, independent claim" only if it resolves both liability and damages.  *See Kerr Mc-Gee Ref. Corp. v. M/T Triumph,* 924 F.2d 467, 471 (2d Cir. 1991).  Here, the Summary Judgment Order did not resolve the issue of liability, let alone liability *and* damages.  Furthermore, the Original Panel's determination of applicable law is of necessity intertwined with INA's remaining arguments relative to the reasonability and good faith of PSMIC's allocation of the Deleet loss.  Thus the Summary Judgment Order did not finally resolve a separate, independent issue because the decision is necessarily interrelated with the issues that survived summary judgment.

Unlike the interim accounting orders in *Zeiler* which did "not serve as a preparation or a basis for further decisions by the arbitrators," and for which confirmation was affirmed, 500 F.3d at 169, the Summary Judgment Order is a "segment[] of a future conclusive award," *Id.* at n. 11, because it directs the parties to "focus any further discovery and their hearing preparation" on matters other than the applicability and effect of Carter-Wallace.  Hargraves Decl. Ex. 19.  Accordingly, PSMIC's petition for confirmation of the Summary Judgment Order is DENIED.

**D. Composition of the Panel**

In the war of letters that followed Mr. Sullivan's resignation and based upon the requirement in the applicable arbitration provisions that a party-appointed arbitrator must be named within 30 days of demand, PSMIC and INA each purported to appoint a panelist on the other's behalf to the panel that they believed had authority to hear the dispute. Although I agree with INA that controlling case law dictates that the arbitration must "commence anew with a full panel," *Marine Products,* 977 F.2d at 68, it would be inequitable to deny PSMIC the right to appoint its own arbitrator in a new proceeding. Having ruled that the parties must start over, they must be permitted to do so on equal footing and in accordance with the arbitration provisions of the Reinsurance Contracts which afford each party 30 days to select the arbitrator of their choice. Therefore, INA's petition to compel arbitration before a panel consisting of Andrew Noga, Lee Rutledge and an umpire to be chosen is DENIED.

## CONCLUSION

For the foregoing reasons, (1) INA's petition to permanently stay the existing arbitration is GRANTED; (2) PSMIC's cross petition to compel the parties to continue the existing arbitration is DENIED; (3) PSMIC's petition for confirmation of the Summary Judgment Order is DENIED; and (4) INA's petition to compel arbitration before a panel consisting of Andrew Noga, Lee Rutledge and an umpire to be chosen is DENIED.     The parties are ordered to commence a new arbitration proceeding in accordance with the applicable provisions of the Reinsurance Contracts forthwith.

**IT IS SO ORDERED.**
**New York, New York**
**December 10, 2008**

U.S.D.J.

10