**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | |
|---|---|
| **In the matter of the Petition of** : | |
| **INSURANCE COMPANY OF NORTH** : | |
| **AMERICA (now known as CENTURY** : | |
| **INDEMNITY COMPANY) and INA** : | |
| **REINSURANCE COMPANY (now known** : | |
| **as R&Q REINSURANCE COMPANY),** : | |
| : | |
| **Petitioners,** : | **08CV7003 (HB)** |
| : | **OPINION & ORDER** |
| **-against-** : | |
| : | |
| **PUBLIC SERVICE MUTUAL INSURANCE** : | |
| **COMPANY** : | |
| **Respondents.** : | |

-------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

In May 2008, during the pendency of arbitration proceedings between Petitioners Insurance Company of North America (now known as Century Indemnity Company) and INA Reinsurance Company (now known as R&Q Reinsurance Company) (collectively, "INA") and Respondent and Cross-Petitioner Public Service Mutual Insurance Company ("PSMIC"), INA's party-appointed arbitrator John D. Sullivan ("Sullivan") learned that he had cancer that required immediate and intensive treatment. As a consequence, Sullivan resigned from the three-person panel. When the parties could not agree about how to address Sullivan's resignation, this litigation ensued. On December 10, 2008 I issued an Opinion and Order (the "Order") applying the "general rule" in the Second Circuit that when a party-arbitrator dies in the middle of arbitration proceedings the arbitration must commence anew. Order at 9 (citing *Marine Products v. MT Globe Galaxy*, 977 F.2d 66 (2d Cir. 1992) ("*Marine Products*"). In January 2009, PSMIC's counsel learned that not only had Sullivan's health improved to the point that he was actively seeking appointment as an arbitrator, but that his recovery preceded issuance of my Order. On the basis of this new information, PSMIC moves for relief from the Order pursuant to Fed. R. Civ. P. 60(b)(2) and (6). Because the Order expressly assumed that Sullivan's illness was so serious that the "general rule" applied but as it turned out Sullivan was even then actively seeking work as an arbitrator, and for the further reasons set forth below, PSMIC's motion for relief pursuant to Fed. R. Civ. P. 60(b)(2) is GRANTED.

1

## BACKGROUND

As set forth in detail in my December 2008 Order, Sullivan's resignation came on the heels of the arbitral panel's issuance of a unanimous summary judgment opinion that, *inter alia*, disposed of INA's chief legal defense and set the stage for further discovery and a hearing on INA's other defenses to PSMIC's claim for payment under certain reinsurance contracts.  See Order at 3.  INA's motion for reconsideration of the panel's summary judgment order was pending at the time Sullivan announced his resignation.  There has been no suggestion that Sullivan's cancer diagnosis and treatment were anything other than legitimate and serious, but on the other hand, having lost on their primary legal defense INA certainly stood to benefit from "another bite at the apple."  In the correspondence that followed Sullivan's resignation and before this Court, INA has argued vigorously that the arbitration must commence anew pursuant to the rule espoused by the Second Circuit in *Marine Products*, 977 F.2d at 66.  PSMIC, for its part, argued that the panel's summary judgment decision constituted a "partial final award," which under the Second Circuit's decision in *Trade & Transport v. Natural Petroleum Charterers*, 931 F.2d 191, 194 (2d Cir. 1991) constitutes "special circumstances" warranting a departure from the general rule.  At oral argument on the cross-petitions, INA's counsel stressed the severity of Sullivan's diagnosis and treatment but his health was not otherwise discussed. See Tr. of November 13, 2008 Hearing ("Tr.") at 12.

In the Order, I first found applicable decisions that considered the death of an arbitral panelist "because neither party dispute[d] that Mr. Sullivan resigned for legitimate and serious health reasons." Order at 5 n. 3.  I went on to distinguish *Trade & Transport* because in this case the arbitral panel's summary judgment was not a "partial final award" that "conclusively decide[d] every point" that the parties had submitted to the panel for resolution.  *Id*. at 6 (quoting *Trade & Transport*, 931 F.2d at 193).  Citing the Second Circuit's decision in *Zeiler v. Deitsch*, 500 F.3d 157, 167 (2d Cir. 2007), I noted the troubling incentives for "bad faith manipulation of the arbitration process" arguably created by a rule that requires an arbitration to commence anew upon the resignation of one party's panelist and expressed my sensitivity to the "potential for wasted resources where an arbitration must be redone from scratch."  Order at 8.  As a consequence of these considerations, I took care to note that "my decision [was] expressly premised on the unique facts of this case where the resignation occurred while pending before the panel was a motion for reconsideration of an order that itself cannot be fairly considered a 'final partial award.'"  *Id*. (quoting *Trade & Transport*, 931 F.2d at 195).  I specifically noted the

unfairness of requiring INA to submit its motion for reconsideration to "a panel comprised of two arbitrators who heard argument on, and ultimately decided the summary judgment motion for which reconsideration is requested and one arbitrator who did not." *Id.* at 8-9.

Through its counsel, PSMIC learned in January 2009 that Sullivan's health had improved to the point that he was again actively seeking employment as an arbitrator.  (Another client of PSMIC's counsel had proposed Sullivan as an arbitrator in a wholly separate arbitration and Sullivan had indicated that he was available.)  Upon further investigation, PSMIC's counsel learned that Sullivan had attended an arbitration conference on November 6 and 7, 2008, after the parties' cross motions in this litigation were fully briefed but before oral argument was heard on November 13, 2008.  INA's counsel attended the same conference.  Needless to say, none of this was brought up at oral argument.

On January 14, 2009, PSMIC's counsel wrote to Sullivan via email to inquire whether he was available to rejoin the panel from which he had resigned in May 2008.  Hargraves Decl. Ex. E.  Before Sullivan replied, INA's counsel responded, copying Sullivan on an email that declared that INA was "unwilling to agree to allow Mr. Sullivan to rejoin the prior, defunct panel." Hargraves Decl. Ex. F.  A few days later, Sullivan responded to PSMIC's counsel, stating that his resignation in May 2008 "was final and not conditional or provisional" and that "[he was] not willing to put [his] name forward because [he] believe[d] that [he had] no right to do so."  *Id.* at Ex. K.  INA did not serve a demand for arbitration before a new panel, as authorized by my December 2008 Order until January 20, 2009, after PSMIC's counsel had inquired about Sullivan's recovery and INA's counsel had refused to accept his reappointment. *Id.* at Ex. H.

## LEGAL STANDARD

"Rule 60(b) provides a mechanism for extraordinary judicial relief available only if the moving party demonstrates exceptional circumstances, and relief under the rule is discretionary." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (internal quotation marks and citations omitted).  Consequently, "[t]he party seeking relief from judgment has an onerous standard to meet."  *United States v. Int'l. Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) ("*Teamsters*").  In order to establish that it is entitled to relief from judgment on the basis of newly discovered evidence pursuant to Rule 60(b)(2)[1]

---

[1] Although PSMIC moves alternatively for relief pursuant to Rule 60(b)(6), the so-called "catchall" provision, its motion must be treated as one for relief on the basis of newly discovered evidence pursuant to Rule 60(b)(2). "Where a claim 'sounds very much like a claim regarding newly discovered evidence,'

'the movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.'

*Id.* (quoting *United States v. IBT,* 179 F.R.D. 444, 447 (S.D.N.Y. 1998)).

## DISCUSSION

### A. Relief From Judgment Pursuant to Rule 60(b)(2)

Here, PSMIC satisfies each of the elements required to establish entitlement to relief from the Order pursuant to Rule 60(b)(2).  First, the newly discovered evidence is of facts that existed at the time of both oral argument on the parties' cross petitions and the Order that resolved them.  INA does not seriously dispute that Sullivan's health had improved by November 2008.  Indeed, in opposition to the instant motion for relief from the Order, INA states that "at least a month prior to the oral argument . . . it was public knowledge that Mr. Sullivan was actively re-engaged in his profession as an arbitrator."  Mem. in Opp'n. at 5.

Rather, INA argues that PSMIC failed to exercise "reasonable diligence" and thus cannot claim to be "justifiably ignorant" of Sullivan's recovery in satisfaction of the second element of a claim for relief under Rule 60(b)(2).  "To succeed on a motion pursuant to Rule 60(b)(2) the evidence presented must be 'truly newly discovered or . . . could not have been found by due diligence.'" *Kurzweil v. Philip Morris Companies, Inc.*, No. 94 Civ. 2373 (MBM), 1997 WL 167043, *4 (S.D.N.Y. Apr. 9, 1997) (quoting *United States v. Potamkin,* 697 F.2d 491, 493 (2d Cir.), *cert. denied,* 462 U.S. 1144 (1983)).  Here, PSMIC's counsel declares under penalty of perjury that he first learned that Sullivan had recovered to the point he was seeking appointment as an arbitrator on January 14, 2009, and INA does not dispute this fact.  Decl. of Daniel Hargraves, dated February 13, 2009 ("Hargraves Decl.") ¶18.  Consequently, Sullivan's recovery constitutes evidence that was in fact "newly discovered."

Furthermore, PSMIC's ignorance of this fact prior to January 2009 is justified.  PSMIC complied with INA's exhortations that, following his resignation in May 2008, PSMIC not

---

the claim is 'controlled by 60(b)(2)' and should not be labeled as if brought under a different provision of Rule 60(b)." *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*,  374 F.3d 158, 178 (2d Cir. 2004) (quoting *Kalamazoo River Study Group v. Rockwell Int'l Corp.,* 355 F.3d 574, 588 (6th Cir.2004)).

communicate with Sullivan.  On May 6, 2008, INA's counsel wrote to PSMIC's counsel that "given the situation [with Sullivan's health], it is both legally improper and morally repugnant to continue to involve Mr. Sullivan."  Hargraves Decl. Ex. D.   INA's counsel continued as follows: "So that Mr. Sullivan need not be bother further, Reinsurers [i.e. INA] will agree that PSMIC has not waived any rights by failing to include him in further communications and, hopefully, out of simple human decency, PSMIC will refrain from contacting him." *Id.*   PSMIC complied with INA's instructions and did not make contact with Sullivan prior to January 2009.  Hargraves Decl. ¶ 18.  INA cannot have it both ways.  Having instructed PSMIC not to contact Sullivan and agreed that PSMIC would not waive any rights by complying with PSMIC's request, INA cannot now claim that PSMIC failed to exercise reasonable diligence to determine the condition of Sullivan's health in November 2008.

The parties make much of the fact that Sullivan attended an insurance arbitration conference in November 2008 that INA's counsel also attended.  INA argues that the fact of Sullivan's attendance at the conference was publicly disclosed in October 2008 because his name was included in a list of registrants for the conference that PSMIC could have obtained in advance of the November 13 oral argument.  INA further argues that PSMIC could have inquired about Sullivan's health by contacting INA's counsel, but failed to do so.  Mem. in Opp'n. at 7.  But if INA's counsel in fact knew that Sullivan had recovered to the point that he was "open for business" as an arbitrator, it was disingenuous for INA's counsel to stress at the oral argument the seriousness of Sullivan's illness and argue for application of the rule that applies upon an arbitrator's death.  Tr. at 12.  It is true that "Rule 60(b) does not exist to provide a remedy for plaintiffs' counsel's tactical decisions," *Lorusso v. Borer*, 260 Fed. Appx. 355, 357, 2008 WL 142818, *1 (2d Cir. 2008), and PSMIC's counsel arguably made a tactical decision to focus its arguments before this Court on the finality of the panel's summary judgment order, not the fact that Sullivan's health had improved to the point where he was available to rejoin the panel.  But under the unique facts of this case, I find PSMIC's ignorance of the fact of Sullivan's recovery to be justified.  In light of INA's representations to the Court about the seriousness of Sullivan's condition and its prior arguments for application of the general rule that applies upon the death of a party arbitrator, equity does not favor its argument here that PSMIC failed to exercise diligence because it did not contact INA's counsel to inquire about Sullivan's health.  Moreover, INA seeks to capitalize on PSMIC's very adherence to its own commands not to involve Sullivan in the dispute triggered by his resignation, essentially arguing that PSMIC should not be allowed to

assert the rights that INA agreed would not be waived if PSMIC refrained from contacting Sullivan.[2]

Third, evidence of Sullivan's recovery and general availability as an arbitrator is admissible and would have changed the outcome of the Order.  Having no reason to question the seriousness of Sullivan's diagnosis and treatment, I expressly found applicable cases that considered the death of a party arbitrator.  Moreover, I acknowledged that "my decision [was] expressly premised on the unique facts of this case where the resignation occurred while pending before the panel was a motion for reconsideration of an order that itself cannot be fairly considered a 'final partial award.'"  *Id*. (quoting *Trade & Transport*, 931 F.2d at 195).  Had I known that at the time the Order was issued that Sullivan was actively soliciting engagements as an arbitrator, I could have reappointed Sullivan pursuant to my authority under 9 U.S.C. §5 and thereby eliminated this potential unfairness to INA while also addressing the two policy concerns noted in the Order.  Not only would such a decision have preserved resources that would be wasted by redoing the arbitration "from scratch" but it also would have eliminated the troubling incentives for bad faith manipulation of the arbitration process highlighted by the Second Circuit in *Zeiler* and heightened in a factual scenario where the arbitrator who resigned is "open for business" by the time the Court considers whether the arbitration may continue.  *See Zeiler*, 500 F.3d at 167.  In short, the fact that the arbitrator who resigned is actively seeking appointment to other arbitral panels is a "special circumstance" that justifies departure from the general rule of *Marine Products*, which is itself premised on the *permanent* unavailability of an arbitral panelist.  *See*, 977 F.2d at 68.  On these unique facts, ordering a replacement arbitrator—whether Sullivan accepts or another is chosen in his place and stead—is also more consistent with the Second Circuit's most recent statements on the issue, namely its characterization in *Zeiler* of the holding of *Trade & Transport*: "in domestic arbitration, absent express agreement to that effect, [the] full panel should not be removed due to the death of party-appointed member; [rather a] replacement

---

[2] What is more, INA's arguments are inconsistent.  INA argues that Sullivan "made it clear when he resigned that he might be in a position to resume working in a few months" and characterizes as a tactical decision PSMIC's choice "not to pursue the possibility of staying the arbitration during Mr. Sullivan's treatments."  Mem. in Opp'n. at 10.  But on the very next page of their opposition brief—and consistent with their position throughout this litigation—INA asserts that "[t]here is no dispute that Mr. Sullivan properly resigned and that his resignation was unconditional and final."  *Id*. at 11.

arbitrator should be designated." *Zeiler*, 500 F.3d at 167 (summarizing holding of *Trade & Transport*, 931 F.2d at 195-96).[3]

Fourth and finally, the newly discovered evidence is not merely cumulative or impeaching. The fact of Sullivan's recovery and availability to serve on other arbitral panels was never presented to the Court and thus cannot be said to be cumulative. *Cf. Lorusso*, 260 Fed.Appx. at 358 (finding no error in district court's conclusion that evidence that would have enhanced witness's credibility was cumulative).

In INA's view, creating an additional exception to the general rule "for resigning arbitrators who later become available" would create uncertainty, promote gamesmanship, and encourage parties "to delay in the hope that the resigning arbitrator would eventually be willing and able to rejoin the panel." Mem. in Opp'n. at 13. I am sympathetic to INA's argument as a general matter—the rule that applies upon the death or resignation of an arbitrator should be clear and easy to apply and should not encourage gamesmanship or delay—but the rule against which INA argues is not created by granting PSMIC the relief it seeks here. Sullivan was available for appointment as an arbitrator as of the date I was asked to decide whether the arbitration should continue or commence anew, but this material fact was not disclosed. Far from creating uncertainty, in the exceedingly rare situation presented by this case—where the original panel can be reconstituted—requiring the arbitration to continue is the closest way to effectuate the intent of the parties under the arbitration agreement. Moreover, the Second Circuit's concerns in *Zeiler* were directed at the incentives created by the rule INA advocates, not the one for which PSMIC argues. Although such policy concerns are not determinative, they are heightened by a rule that would require the Court to disregard the fact that a party-appointed arbitrator who has resigned from one panel is actively soliciting appointment to other panels.

In sum, PSMIC has met its "onerous burden" and established each of the four preconditions to relief from the Order on the basis of the newly discovered evidence of Sullivan's recovery. Consequently, PSMIC is entitled to relief from the December 10, 2008 Order insofar as it granted INA's petition to permanently stay the arbitration then pending before

---

[3] In so characterizing the holding of *Trade & Transport*, the *Zeiler* court does not mention the fact on which the earlier case turned: namely, that the parties to the arbitration at issue in *Trade & Transport* had asked for and received a "partial final award" before the panelist's death. *See*, *Trade & Transport*, 931 F.2d at 195-96. Thus, to the extent that *Zeiler* relied on *Trade & Transport* in support of its holding that the arbitration agreements at issue in *Zeiler* required designation of a replacement arbitrator, *Zeiler* can be read to expand the rule of *Trade & Transport*.

the original panel, denied PSMIC's cross-petition to compel the parties to continue the existing arbitration, and declined to appoint an arbitrator to replace Sullivan pursuant to 9 U.S.C. § 5.

### B. Appointment of Replacement Arbitrator

I now must consider PSMIC's request for an order appointing Sullivan as an arbitrator pursuant to 9 U.S.C. § 5.[4]   Pursuant to that provision of the Federal Arbitration Act, if the arbitration agreement provides for a method of appointing an arbitrator that method must be followed.  But,

> If no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there is a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under said agreement with the same force and effect as if he or they had been specifically named therein.

9 U.S.C. §5.  The Second Circuit has interpreted the term "lapse" to refer to "a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators or some other mechanical breakdown in the arbitrator selection process" such as a deadlock or a vacancy created by the death of an arbitrator.  *In re Salomon Inc. Shareholders' Derivative Litigation 91 Civ. 5500 (RRP)*, 68 F.3d 554, 560 (2d Cir. 1995) (internal citation and quotation marks omitted).  A party "fails to avail" itself of a contractually prescribed method for appointment of an arbitrator when it "refuses to comply [with that method], thereby delaying arbitration indefinitely." *Id.*

In opposition to the reappointment of Sullivan, INA argues first that Sullivan is unwilling to be reappointed to the panel and second that he is no longer qualified to serve on the panel. INA also argues that the "adversarial" position it was forced to take with the original panel following Sullivan's resignation raises serious doubts as to whether it can obtain a fair and impartial hearing from the original panel.   These arguments are unavailing.  First, based upon the preemptive email from INA's counsel that INA was "unwilling" to allow Sullivan to rejoin the original panel and this Court's then-operative Order that permanently stayed the original proceedings, in January of this year Sullivan was justified in his belief that he did not have a

---

[4] In its original cross-petition, PSMIC sought an order compelling arbitration before the two remaining members of the original panel and a replacement arbitrator that PSMIC had purported to appoint on INA's behalf pursuant to relevant arbitration provisions after INA had refused to acknowledge the continued authority of the original panel.   In the alternative, PSMIC sought an order compelling arbitration before the two remaining panel members and a replacement arbitrator appointed by the Court pursuant to 9 U.S.C. § 5. *See* Cross-Petition at ¶117.

right to rejoin the original panel to permit those arbitration proceedings to continue where they left off.  But INA cannot hope to know whether Sullivan would be willing to rejoin the original panel pursuant to the authority expressly granted by *this* Order.  Sullivan's apparent unwillingness to rejoin the panel in January 2009 does not preclude this Court from authorizing him to do so and making it clear, as this Order does, that this is the procedure urged by the Court and the prevailing authorities.

Second, INA argues that Sullivan is not qualified under the relevant arbitration provisions to serve as an arbitrator because he is no longer an executive officer of an insurance company as required by the applicable arbitration provisions.  But Sullivan, who was after all INA's appointed panelist, was an active executive officer at the time of his initial appointment.  Moreover, INA not only accepted the original panel as duly constituted, but after Sullivan resigned from the insurance company where he was an officer, both parties agreed to waive the "active executive" requirement.  Second Decl. of Daniel Hargraves, dated March 29, 2009 ("Sec. Hargraves Decl."), Ex. 1 at 18, 28-29.  Having waived this requirement, INA cannot unilaterally reinstate it to disqualify Sullivan now that I conclude the original arbitration proceedings must continue.

Finally, INA's argument that it cannot receive a fair and impartial hearing from the original panel not only misses the mark, but is premature.  Subsequent to Sullivan's resignation, the remaining members of the original panel—umpire Moak and panelist Tobin—adopted the position that Sullivan's resignation did not deprive the panel of authority to continue to hear the dispute and stated that their position "was supported by the principle established in [Trade &] Transport and other cases cited by PSM[IC] and to be distinguishable on its facts from Marine Products and other cases cited by INA."  Declaration of Lloyd Gura, dated March 19, 2009 ("Gura Decl."), Ex. 20. Consequently, the remaining panelists initially attempted to move the arbitration forward.  However, once it was clear that INA would not recognize their authority, the remaining panelists "urge[d] the parties to seek the guidance of a court as to how this matter should proceed."  *Id.*  The mere fact that the remaining panel members took a position on a purely legal question contrary to that asserted by INA does not mean that the original panel is incapable of fairly and impartially hearing the balance of the dispute.  Furthermore, a challenge to the panel on the grounds of bias is not ripe until the conclusion of the arbitration.  The Second Circuit has stated that "'it is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the

rendition of an award.'" *Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, 895 (2d Cir. 1997) (quoting *Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411, 414 n. 4 (2d Cir. 1980). Accordingly, even if INA could establish that the original panel was biased against it, such a challenge is premature. *See* 9 U.S.C. § 10(a)(2) (district court may vacate arbitration *award* "where there was evident partiality or corruption in the arbitrators").

Under 9 U.S.C.§ 5, a court may appoint an arbitrator only if the arbitration agreement does not specify a method of appointment or if that method is not followed.  Here, the arbitration provisions of the reinsurance contracts provide that disputes "shall be submitted to three arbitrators, one to be chosen by each party and the third by the two so chosen."  *See*, *e.g.*, Decl. of Raymond Mastrangelo, dated August 1, 2008 ("Mastrangelo Decl."), Ex. C.   The parties followed this procedure to convene the panel, which at the outset was comprised of Sullivan and Tobin, who then selected Umpire Moak.  The agreement is silent, however, with respect to the procedure to be followed to fill a vacancy created by the death or resignation of an arbitrator.

Following Sullivan's resignation, the parties assumed that they would follow the appointment procedure in the arbitration agreement, although INA disputed the authority of the original panel to continue hearing the case.  INA's decision to seek an order from this Court that the arbitration must commence anew—an order they initially succeeded in obtaining—should not be construed as a "failure to avail" itself of the contractually prescribed method for appointing an arbitrator, nor should the time spent litigating here be considered a "lapse" under 9 U.S.C. §5.  *See In re: Solomon Inc.*, 68 F.3d at 560 (testing the scope of an arbitration agreement in good faith before a court does not constitute party's "failure to avail" under 9 U.S.C. §5). Nevertheless, the arbitration agreements' silence on the method for filling a vacancy is enough for me to exercise the appointment authority conferred by 9 U.S.C. § 5.  *See, e.g., Stop & Shop Supermarket Company LLC v. United Food and Commercial Workers Union Local 342, AFL-CIO, CLC*, 246 Fed. Appx. 7 (2d Cir. 2007); *Trade & Transport*, 931 F.2d at 196 (affirming district court's appointment of replacement arbitrator selected by party whose appointed arbitrator died where arbitration agreement was silent on method for filling vacancies).  INA initially selected Sullivan as its party-appointed arbitrator and pursuant to this Order the parties are to continue the arbitration that was pending at the time of Sullivan's resignation.  Sullivan's reappointment will permit the parties to do just that and to pick up where they left off.  Should Sullivan be unable or unwilling to rejoin the panel *of his own accord* (i.e. without intermeddling

10

by INA) then INA will have the opportunity to select a replacement panelist in accordance with the appointment procedure set forth in the arbitration agreements.

## CONCLUSION

The December 10, 2008 Order of this Court is hereby vacated. The parties are hereby ordered to continue the arbitration proceedings pending before the original panel as of the date of Sullivan's withdrawal. This order confirms the authority of the original panel to continue to hear the arbitration that was halted *in medias res* upon Sullivan's resignation. Pursuant to this Order and the authority conferred upon the Court by 9 U.S.C. § 5, John D. Sullivan is reappointed to the panel. Should Sullivan be unwilling or unable to rejoin the existing panel, he will write the Court with his decision and notify the parties within thirty days of the date hereof. Should such event come to pass, and despite what the Court considers at least questionable, if not reprehensible, conduct by INA, INA will have thirty days thereafter to choose a replacement for Sullivan. INA's failure to do so will result in a Court appointment. The Clerk of the Court is instructed to close this motion.

SO ORDERED
June 29, 2009
New York, New York

_____
U.S.D.J.

11